# Supreme Court of the Navajo Nation

---

**In re Custody of: C.L.M. and A.M., Minors,**
**Tarah Platero, Petitioner-Appellant,**
v.
**Amos Mike, Respondent-Appellee.**
**Decided March 17, 1995**

---

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and CADMAN, Associate Justices.

David Ross Gardner, Esq., Bernalillo, New Mexico, for the Appellant; and Thomas E. Chism, Esq., Albuquerque, New Mexico, for the Appellee.

Opinion delivered by Austin, Associate Justice.

## I. Facts

The Appellant, Tarah Platero ("mother"), and the Appellee, Amos Mike ("father"), have been disputing custody of their daughters, C.L.M. and A.M., since at least May of 1992. Until June of 1994, the mother had custody of both children and the father had monthly visitation.

On June 22, 1994, the Canoncito Family Court found the mother in indirect civil contempt for not complying with visitation as provided in its orders of November 23 and December 20, 1993.

The November 23, 1993 order provided for the father to have visits once a month with A.M. and, to facilitate visitation, required that A.M. be enrolled in Canoncito Tribal School for the spring 1994 semester; C.L.M. was not required to participate in any visits. The December 1993 order arose from a show cause hearing in which the mother was found in contempt and fined $300.00 for not allowing visitation on November 5, 1993, as ordered two days earlier on November 3, 1993. The December 1993 order required future compliance with the order of November 23, 1993, which contained a visitation schedule and provided for the mother's immediate arrest and incarceration in the event of her failure to comply. In addition, the court gave notice that if the mother continued to deny visitation, the court "may have no alternative but to place the child in [father's] custody, if [mother's] continued conduct is found to be detrimental to the child's welfare."

At the June 22, 1994 show cause hearing it was adduced that visitation took place in February as scheduled; the March visit did not occur because the mother had car trouble and was delayed in returning A.M. from school in Albuquerque; the father chose not to visit in April; the May visit was postponed for one week at A.M.'s request; and the mother did not enroll A.M. in Canoncito Tribal School for the spring semester.

The family court found explanations provided by the mother insufficient to quash the motion for contempt. The court placed the mother in custody until she apologized to the father, attended three parenting counseling sessions, and provided proof of attendance. The court also found that the mother's continued refusal to allow visitation and her belligerence in not complying with court orders had a detrimental effect on the children. Thus, the court gave the father custody of both children. Finally, the court awarded the father $600.00 as attorney's fees.

## II. Issues

This Court must determine first, whether the family court's finding of contempt was an abuse of discretion and second, whether the sanctions imposed were justified.

## III. Discussion

### A. Contempt

Participants in litigation jeopardize the judicial process when they refuse to abide by its rules. The contempt power provides courts with the authority to deal effectively with this problem and, thus, is essential to the due administration of justice. For Navajo judicial process, this power is grounded in 7 N.T.C. § 255, which gives trial courts the power to "issue any writs or orders necessary and proper to the complete exercise of [the court's] jurisdiction." Paralleling this authority, the Court recognizes that courts have inherent power to enforce court orders through contempt proceedings. *In re Contempt of: Sells*, 5 Nav. R. 37 (1985).

Civil contempt proceedings are used to compel obedience to court orders and to preserve and enforce the rights of litigants. *In re Contempt of Mann*, 5 Nav. R. 125, 127 (1987). Contempt is indirect when it does not occur in the presence of the court. *In re Summary Contempt of Tuchawena*, 2 Nav. R. 85 (1979). For violating court-ordered visitation, the mother was held in indirect civil contempt.

In determining what constitutes contempt and in formulating a remedy, a trial court has much discretion. *Tuchawena*, 2 Nav. R. at 89. A court's determination regarding contempt will only be reviewed for clear abuse of discretion or conduct which is so unreasonable as to be capricious and arbitrary. *Id.* We discussed the meaning of judicial discretion in Sells:

> The use of the word "discretion" as applied to judges or courts means discretion to act within certain boundaries. For judicial discretion those boundaries are the rules and principles of law as applied to the facts of a particular case.

*In re Contempt of Sells,* 5 Nav. R. at 38 (citations omitted). Thus, in reviewing discretion we examine whether the judge or court acted within the rules, principles, and customs properly applied to the facts of the case.

The mother argues that the evidence does not support the court's conclusions that her refusal to comply with court-ordered visitation was knowing, steadfast, continued, and belligerent. However, her own testimony proves that she was aware of the contents of the visitation orders and she disobeyed them. Failure to obey a court order is contempt. *John v. Herrick,* 5 Nav. R. 129, 130 (1987). There is no requirement that a court establish the exact nature of a party's non-compliance in contempt proceedings. The determination is discretionary. Regardless of the possible misinterpretation of other aspects of her conduct, there is clear evidence that the mother was aware of and violated the court orders. The family court's finding of indirect civil contempt rests on firm ground, and thus is not an abuse of discretion. We affirm the finding of contempt.

## B. Sanctions

If sanctions imposed under the contempt power do not conform with the applicable rules, the authority of the courts will be jeopardized. In *In re Contempt of Mann,* we said:

> The power of Navajo courts to punish for contempt must be exercised within the bounds of due process embodied in the Indian Civil Rights Act, 25 U.S.C. § 1302(8) (1968), and the Navajo Bill of Rights, 1 N.T.C. § 8 (1967) (current version at 1 N.T.C. § 3 (1986)).

5 Nav. R. at 126. Evaluating the process accorded in the case before the Court, there is no question that the mother had notice of the sanctions proposed. The family court, however, did not follow required procedure when it imposed these sanctions.

## 1. Change of Custody

When considering a change of custody, a court's responsibility is not limited to ensuring notice and the opportunity to be heard. The settled law is as follows:

> [P]rocedure requires that a motion for modification be filed with proper service upon the opposing party; that the motion set forth facts showing a change of circumstances and state reasons why a modification of custody is in the best interests of the child; that a hearing be had; that the moving party show a substantial change in circumstances since the last custody order; and that the court find that the change in custody is in the best interests of the child.

*Pavenyouma v. Goldtooth*, 5 Nav. R. 17, 18 (1984) *citing Lente v. Notah*, 3 Nav. R. 72 (1982).

In the case at issue, no motion for modification was ever filed. The father's motion for order to show cause contains one sentence requesting that the court place custody of the children with the father. Even if we were to consider this lone sentence as a motion for modification, there are no facts alleged in it to show substantial change in circumstances, nor are there any statements indicating that modification is in the children's best interest.

The burden of proof in a custody modification proceeding is on the party asserting that change of custody is necessary and in the best interest of the child. *Barber v. Barber*, 5 Nav. R. 9, 11 (1984). No one has carried this burden here.

A court considering modification of a custody order has a special responsibility to act as parent of the child and to act in the best interest of the child. *Id.* at 12. Failure to make findings of fact as to whether a change of custody is in the best interest of the child is reversible error. *Id.* The family court did conduct a hearing, but its focus was on contempt, not on custody modification. What findings were made only amount to bald assertions that the mother's response to the court orders had a detrimental effect on the children. No findings of best interest were made. Under these circumstances, we have no choice but to reverse the court's ruling on change of custody. *Id.*, see also *Help v. Silvers*, 4 Nav. R. 46, 47 (1983).

As the mother notes, there is an additional problem with the family court's decision to transfer custody of both children to the father. In its November 23, 1993 order, the court recognized C.L.M.'s preference for her mother and accorded C.L.M. the right to decide whether or not she would visit her father. The failure to consider her interest separately when modifying custody further demonstrates that the court did not evaluate the children's best interests.

The family court's failure to follow proper procedure in modifying custody is a grave error given the potential for harm to the children. Nor was it proper to entertain the issue of custody modification in the context of a contempt hearing. To protect the unique values and interests at stake in each proceeding, contempt and custody modification must be heard separately.

## 2. Incarceration

A court selecting contempt sanctions must use the least possible power adequate to the end proposed. *See, e.g., Spallone v. United States*, 493 U.S. 265, 276 (1990). Having already fined the mother $300.00 for violating the November 23, 1993 order, the family court was justified in concluding that more severe sanctions were necessary for her next violation. How much more severe should be the sanctions is the question.

Sanctions must relate directly to findings of fact. *Help v. Silvers*, 4 Nav. R. at 47. While there is some relation between the finding that the mother did not comply with the visitation schedule and the reqirement that the mother apologize to the father, it is not all evident that any finding called for requiring the mother to

attend three parenting sessions before she could be released from incarceration. A correlation might exist between the conduct found contemptuous and a lack of parenting skill. However, there are no findings that the mother's parenting skills are deficient to support the order to attend parenting sessions, nor is there any basis for the apparent presumption that general parenting classes would address conflict between parents over custody and visitation. Thus, the family court is affirmed on incarceration and release conditioned on apology, but reversed on attendance at three parenting sessions and proof thereof.

### 3. Attorney's Fees

Navajo Nation courts have the authority to award attorney's fees in special circumstances. *Hall v. Arthur*, 3 Nav. R. 35, 41 (1980). Contempt proceedings present a special set of circumstances. *Id., see also John v. Herrick*, 5 Nav. R. at 131-32. Thus, an award of attorney's fees was within the court's authority. When determining the amount, a court is to "determine, on its own, what fair attorney's fees would be, without regard to ... the amount of such fees." *Hall v. Arthur*, 3 Nav. R. at 41. Given the nature of this evaluation, the family court's decision should be reviewed for abuse of discretion. The absence of any findings on this matter makes it difficult for the Court to do so. We, thus, will take judicial notice that $600.00 for seven hours of time expended by the father's counsel is fair compensation. The award and amount of attorney's fees are affirmed.

In accordance with Rule 18, Navajo Rules of Civil Appellate Procedure, the father has requested $1,497.24 as attorney's fees on appeal. An award of attorney's fees on appeal is within the discretion of this Court. Because the mother's appeal was not without merit, we will grant two-thirds of that request or $998.16.